UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY
    Plaintiff,

VS.

INDEPENDENT ENERGY SERVICES, INC.
D/B/A PETCO PLUMBING & HEATING,
RICHARD PETERSON, VIOLET
E. ANDREWS F/K/A VIOLET PETERSON,
JOHN F. KEARNEY, JR. and
LAURA B. KEARNEY
    Defendants.

CIVIL DOCKET NO.

DISTRICT COURT
HARTFORD-CT

NOVEMBER 14, 2003

## COMPLAINT

The Plaintiff, North American Specialty Insurance Company ("NAS"), complains and alleges against Defendants, Independent Energy Services, Inc. d/b/a Petco Plumbing & Heating, Richard Peterson, Violet Peterson, John F. Kearney, Jr. and Laura B. Kearney, as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of Seventy Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and because there is complete diversity of citizenship between the parties.

2. Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

10167.0017

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## THE PARTIES

3.  Plaintiff, North American Specialty Insurance Company (NAS), is a corporation organized and validly existing under the laws of the State of Illinois with a principal place of business in Itasca, Illinois. At all times material hereto, NAS was engaged in doing business as an underwriter of contract surety bonds.

4.  Defendant, Independent Energy Services, Inc. ("IES"), is a corporation organized and existing under the laws of the State of Connecticut with a principal place of business in Windsor, Connecticut. At all times material hereto, IES was engaged in doing business as a general contractor throughout the northeastern United States.

5.  Defendant, Richard Peterson, is an individual and resident of the State of Connecticut having a last known address of 35 Austin Drive, Vernon, Connecticut.

6.  Defendant, Violet E. Andrews f/k/a Violet Peterson, is an individual and resident of the State of Connecticut having a last known address of 35 Austin Drive, Vernon, Connecticut.

7.  Defendant, John F. Kearney, Jr., is an individual and resident of the State of Connecticut having a last known address of 59 Pondside Lane, Rocky Hill, Connecticut.

8.  Defendant, Laura B. Kearney, is an individual and resident of the State of Connecticut having a last known address of 59 Pondside Lane, Rocky Hill, Connecticut.

## BACKGROUND

9.  On or about December 1, 1998, Defendant, IES, entered into a contract (the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"Contract") with non-party, Middletown Township Public Schools, 59 Tindall Road, Middletown, New Jersey (the "Owner"), as contractor, to furnish labor, materials and equipment for the construction of a project known as Additions and Renovations to Bayshore Middle School (Div. 15 Heating – Ventilation – Cooling) (the "Project").

10. Pursuant to the Contract, IES was required to post a performance bond (the "Performance Bond") guaranteeing the performance of the Contract and a payment bond (the "Payment Bond") for the benefit of IES's subcontractors and suppliers on the Project.

11. Defendant, IES, requested and Plaintiff, NAS, issued, both the Performance Bond and Payment Bond for the Project.

12. As a condition of, and in consideration for, the issuance of the Performance Bond and Payment Bond, NAS, on or about June 12, 1998, required the Defendants, IES, Richard Peterson, Violet Peterson, John F. Kearney, Jr. and Laura B. Kearney (collectively hereinafter referred to as the "Defendant Indemnitors"), to enter into an Agreement of Indemnity with NAS in which the Defendant Indemnitors agreed to exonerate and indemnify NAS in the event of the failure of IES to perform any of its bonded obligations.

13. The relevant portions of the Agreement of Indemnity are set forth, in relevant part, as follows:

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**INDEMNITY:**

SECOND: The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds; (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

**ADVANCES:**

TENTH: The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purpose of any such contracts, and all costs, expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**BOOKS AND RECORDS:**

ELEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

A copy of the Agreement of Indemnity is attached hereto as Exhibit A.

14. Defendant, IES, contracted with several subcontractors and suppliers to furnish labor and materials to the Project. After commencing work on the Project, IES indicated to the Surety that it was financially unable to pay several of these subcontractors and suppliers or complete its work on the Project.

15. As a result, and at IES's express written requests, the Surety advanced proceeds to IES, through its attorneys, to fund completion of the Project. IES breached its duties and obligations under the Payment Bond and Performance Bond by failing and refusing to complete the Project and by failing and refusing to pay its subcontractors and suppliers.

16. Furthermore, on or about June 4, 2003, the Project Owner terminated IES's Contract and asserted a claim against the Surety's Performance Bond for costs associated with the completion of IES's Contract obligations.

17. Plaintiff has notified the Defendant Indemnitors of the claims made against the Payment and Performance Bonds and their duties and obligations under the

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Agreement of Indemnity, including their responsibility to reimburse the Surety for its loses and to exonerate and pay the Surety's attorneys' fees, costs and expenses resulting from the Performance Bond claim. NAS has also notified the Defendant Indemnitors of their obligations under the Agreement of Indemnity to cooperate with the Surety in the investigation of claims asserted against the Performance Bond and to furnish the Surety with all project related documents to assist with its investigation.

18. Nevertheless, despite demand, the Defendant Indemnitors have failed to indemnify and hold NAS harmless from all losses as a result of IES's failure to satisfy its duties and obligations under the Performance Bonds and the Agreement of Indemnity. Moreover, despite the Surety's numerous requests, the Defendant Indemnitors have failed to cooperate with the Surety in the investigation of the claim asserted against the Performance Bond. Indeed, the Defendants have refused to provide the Surety with several of the categories of documents sought relating to the Project.

## COUNT ONE [Specific Performance]

1-16. Plaintiff, NAS, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 16 of this Complaint as Paragraphs 1 through 16 of this Count One.

17. Plaintiff, NAS, has performed all of its duties and obligations under the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Agreement of Indemnity, save and except for those excused by the acts and omissions of the Defendant Indemnitors.

18. The Defendant Indemnitors have breached the Agreement of Indemnity by failing and refusing to perform their duties and obligations to NAS thereunder in connection with the Owner's claim against the Performance Bond. The Defendant Indemnitors have further breached the Agreement of Indemnity by failing and refusing to perform their duties and obligations to NAS thereunder with respect to the reimbursement of monies advanced to IES by the Surety together with all other losses, costs and attorneys' fees incurred by the Surety in accordance with the terms of the Agreement of Indemnity.

19. The Agreement of Indemnity obligates the Defendant Indemnitors to post collateral security with the Plaintiff to indemnity NAS against any loss that NAS might suffer under the Performance Bond. Plaintiff has notified the Defendant Indemnitors of their duties and obligations under the Agreement of Indemnity, including their duty to post collateral, and the Defendant Indemnitors have refused, failed or neglected to post any such collateral.

20. Plaintiff's remedy at law is inadequate in these premises in that unless this Court orders the Defendant Indemnitors to post collateral herein, the Defendant Indemnitors between now and the time of trial will have the ability to dispose of their assets so that at the time of trial there will be inadequate assets available to satisfy any

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

judgment that the Plaintiff might obtain under the terms and provisions of the Agreement of Indemnity. Further, Plaintiff is informed and believes and thereon alleges that the Defendant Indemnitors may dispose of their assets other than in the ordinary course of business unless restrained from doing so, and ordered to post collateral with NAS.

21. As a result of the foregoing, Plaintiff's remedy at law is inadequate and NAS is entitled, pursuant to the terms and provisions of the Agreement of Indemnity, to pursue specific performance, and the Plaintiff will seek an order from this Court compelling the Defendant Indemnitors to post adequate collateral with NAS, pursuant to the terms and provisions of the Agreement of Indemnity.

## COUNT TWO [Breach of Contract]

1-16. Plaintiff, NAS, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 16 of this Complaint as Paragraphs 1 through 16 of this Count Two.

17. Plaintiff has performed all of its obligations under the Agreement of Indemnity, save and except for those excused by the acts and omissions of the Defendant Indemnitors.

18. The Defendant Indemnitors have breached the Agreement of Indemnity in that despite notification by the Plaintiff of their obligations, the Defendant Indemnitors failed or neglected to perform their duties and obligations to the Plaintiff herein in that

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

they failed, neglected, and refused to pay the bills for labor, materials and equipment furnished to the Project, together with the funds advanced by the Surety for completion of the Project together with all other losses, attorneys' fees, investigation expenses and costs.

19. The Defendant Indemnitors have further breached the Agreement of Indemnity by failing and refusing to cooperate with the Surety in investigating the claim asserted against the Performance Bond.

20. As a result of the Defendant Indemnitors' breach of their duties and obligations under the Agreement of Indemnity, Plaintiff has incurred and paid, and will continue to incur and pay, losses, expenses, attorneys' fees and costs, for which the Defendant Indemnitors are obligated to compensate NAS in accordance with their duties and obligations under the Agreement of Indemnity.

**COUNT THREE   [Quia Timet]**

1-16. Plaintiff, NAS, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 16 of this Complaint as Paragraphs 1 through 16 of this Count Three.

17. By reason of the fact that the Payment and Performance Bonds are still outstanding and have never been exonerated, the Plaintiff fears that claims will be made by the obligees, exposing the Plaintiff to damages for the unpaid bills for services

- 9 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and materials provided to the Project along with completion costs, other losses, expenses and attorneys' fees.

18. As a result of the foregoing, the Plaintiff is entitled to an order of this Court compelling the Indemnitors to exonerate and reimburse the Plaintiff for all expenses which the Plaintiff has previously incurred or in the future will incur and an order that the Defendant Indemnitors be obligated to perform their duties and obligations under the Agreement of Indemnity.

**WHEREFORE**, the Plaintiff, NAS, prays judgment against the Defendants as follows:

1. Monetary damages;

2. Costs;

3. Interest;

4. Attorneys' fees, costs and expenses incurred in the investigation, defense and payment of any and all claims made on the Payment and Performance Bonds and incurred in the prosecution of the present action;

5. For an Order compelling the Defendant Indemnitors to deposit with the Plaintiff adequate collateral to indemnify the Plaintiff for any losses which NAS has previously suffered or in the future will suffer under the Performance Bond.

6. Any such other relief the Court may deem appropriate.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

PLAINTIFF,
NORTH AMERICAN SPECIALTY
INSURANCE COMPANY

By _____
Peter E. Strniste, Jr. ct20830
HALLORAN & SAGE LLP
Its Attorneys

471290.1(HS-FP)

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

# Agreement of Indemnity

**North American Specialty Insurance Company**
Manchester, New Hampshire 03101

THIS AGREEMENT entered into by and between the undersigned, herein called Indemnitors, and North American Speciality Insurance Company, located in Manchester, New Hampshire, and herein called Surety, witnesseth:

WHEREAS, in the transaction of business certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the Surety to execute such bonds, and as a prerequisite to the execution of such bond or bonds, the Surety requires complete indemnification.

WHEREAS, it may be necessary or desirable for North American Specialty Insurance Company to execute bonds as Surety for or on behalf of the Indemnitors.

WHEREAS, the Indemnitors have a substantial material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

NOW, THEREFORE, in consideration of the premises the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns as follows:

## PREMIUMS

FIRST: The Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon until the Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

## ASSIGNMENT

THIRD: If such bond be given in connection with a contract, the Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement, or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph, or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual. (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.

## TRUST FUND

FOURTH: If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds; and this Agreement and declaration shall also constitute notice of such trust.

## UNIFORM COMMERCIAL CODE

FIFTH: This Indemnity Agreement shall constitute a Security Agreement to the Surety, and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

NAS 0123

the suspension or forfeiture of any contract, non-payment of premiums on any bond of the Contractor, the conviction for a felony, imprisonment, insolvency or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor or of the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall promptly upon demand pay to the Surety all losses and expenses so incurred.

### CHANGES

SEVENTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

EIGHTH: In the event of any claim or demand being made by the Surety against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

NINTH: The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or the return or exchange of any collateral that may have been obtained, and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

### ADVANCES

TENTH: The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, and all money expended in the completion of any such contracts by the Surety or lent or advanced from time to time to the Contractor or guaranteed by the Surety for the purposes of any such contracts, and all costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

### BOOKS AND RECORDS

ELEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

### DECLINE EXECUTION

TWELFTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement, and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

### NOTICE OF EXECUTION

THIRTEENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

### HOMESTEAD

FOURTEENTH: The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

### SETTLEMENTS

FIFTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety, in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

SIXTEENTH: Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broad as the liability of the Surety is construed toward its obligee.

SEVENTEENTH: The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

### SURETIES

EIGHTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

NAS 0124

## SUITS

NINETEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

TWENTIETH: That the indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

TWENTY-FIRST: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

TWENTY-SECOND: The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

TWENTY-THIRD: This Agreement may be terminated by the Indemnitors upon twenty days' written notice sent by registered mail to the Surety in Cleveland, Ohio 44116, but any such notice of termination shall not operate to modify, bar or discharge the Indemnitors as to the Bonds that may have been theretofore executed.

TWENTY-FOURTH: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

TWENTY-FIFTH: THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER WHATEVER BONDS (WHETHER OR NOT COVERED BY ANY OTHER AGREEMENT OF INDEMNITY SIGNED AT ANY TIME BY ANY ONE OR MORE OF THE INDEMNITORS – ALL OTHER AGREEMENTS OF INDEMNITY OF ANY KIND BEING SUPPLEMENTAL TO THIS), MAY BE EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

TWENTY-SIXTH: ANY PERSON WHO, WITH THE INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

TWENTY-SEVENTH: _____

IN TESTIMONY WHEREOF, the Indemnitors have hereunto set their hands and fixed their seals this 12th day of June, 99.

North American Specialty Insurance Company
(Surety)

By _____     By _____ (Seal)

Corporate Indemnitors

Independent Energy Services, Inc. dba Petec Plumbing & Heating, 775 Bloomfield Ave, Hartfor
(Full Name and Address of Corporate Indemnitor)

ATTEST

By _____
Richard C. Peterson, Corporate Sec. (Title)

By _____
Mark W. Judson     President (Title)

ATTEST

(Full Name and Address of Corporate Indemnitor)

_____ (Title)

ATTEST

(Full Name and Address of Corporate Indemnitor)

_____ (Title)

ATTEST

By _____ Title _____

(Full Name and Address of Corporate Indemnitor)

by _____

ATTEST

By _____ Title _____

(Full Name and Address of Corporate Indemnitor)

by _____

### Individual Indemnitors

WITNESS

*Delma A. Rozzero* (signature)

*Delma A. Rozzero* (signature)

*Delma A. Rozzero* (signature)

*Delma A. Rozzero* (signature)

*Delma A. Rozzero* (signature)

*Delma A. Rozzero* (signature)

Mark W. Judson
72 Old Farm Road, Sturbridge, MA
(Full Name and Address of Individual Indemnitor)

by _____

Shiela Judson
72 Old Farm Road, Sturbridge, MA
(Full Name and Address of Individual Indemnitor)

by _____

Richard C. Peterson
35 Austin Drive, Vernon, CT
(Full Name and Address of Individual Indemnitor)

by _____

Violet E. Peterson
35 Austin Drive, Vernon, CT
(Full Name and Address of Individual Indemnitor)

by _____

John F. Kearney, Jr.
59 Pondside Lane, Rocky Hill, CT
(Full Name and Address of Individual Indemnitor)

by _____

Laura B. Kearney
59 Pondside Lane, Rocky Hill, CT
(Full Name and Address of Individual Indemnitor)

by _____

(Full Name and Address of Individual Indemnitor)

by _____

(Full Name and Address of Individual Indemnitor)

by _____

(Full Name and Address of Individual Indemnitor)

by _____

(Full Name and Address of Individual Indemnitor)

by _____

### Partnership Indemnitors

(Full Name and Address of Partnership Indemnitor)

by _____

(Full Name and Address of Partnership Indemnitor)

by _____

IMPORTANT: ALL SIGNATURES MUST BE ACKNOWLEDGED ON THE ATTACHED FORMS

NAS 0126

**CORPORATION ACKNOWLEDGMENT**

State of __Connecticut__
County of __Hartford__ ss __Windsor__
  On the __12th__ day of __June__, 19 __98__, before me personally came
  __Mark W. Judson__

to me known, who, being by me duly sworn, did depose and say that he resides in __Sturbridge, Massachusetts__

that he is the __President__ of the __Independent Energy Systems, Inc.__, the corporation which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said Agreement of Indemnity by like order.

*Debra A. Roggero*
DEBRA A. ROGGERO
NOTARY PUBLIC
MY COMMISSION EXPIRES 4/30/02

State of _____
County of _____ ss
  On the _____ day of _____, 19 _____, before me personally came
  _____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____ the corporation which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said Agreement of Indemnity by like order.

Notary Public

State of _____
County of _____ ss
  On the _____ day of _____, 19 _____, before me personally came
  _____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____ the corporation which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said Agreement of Indemnity by like order.

Notary Public

State of _____
County of _____ ss
  On the _____ day of _____, 19 _____, before me personally came
  _____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____ the corporation which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said Agreement of Indemnity by like order.

Notary Public

State of _____
County of _____ ss
  On the _____ day of _____, 19 _____, before me personally came
  _____

to me known, who, being by me duly sworn, did depose and say that he resides in _____

that he is the _____ of the _____ the corporation which executed the attached Agreement of Indemnity; that he knows the seal of the said corporation; that the seal affixed to the said Agreement of Indemnity is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said Agreement of Indemnity by like order.

Notary Public

NAS 0127

State of __Connecticut__
County of __Hartford__                    ss __Windsor__
On the __12th__ day of __June__                    19 __98__, before me personally came
__Richard C. Peterson and Violet E. Peterson__

to me known, and known to me to be the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

*Debra A. Roggero*
**DEBRA A. ROGGERO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 4/30/02

---

State of __Connecticut__
County of __Hartford__                    ss __Windsor__
On the __12th__ day of __June__                    19 __98__, before me personally came
__Mark W. Judson and Shiela Judson__

to me known, and known to me to be the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

*Debra A. Roggero*
**DEBRA A. ROGGERO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 4/30/02

---

State of __Connecticut__
County of __Hartford__                    ss __Windsor__
On the __12th__ day of __June__                    19 __98__, before me personally came
__John F. Kearney, Jr. and Laura B. Kearney__

to me known, and known to me to be the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

*Debra A. Roggero*
**DEBRA A. ROGGERO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 4/30/02

---

State of _____
County of _____    ss
On the _____ day of _____    19 _____, before me personally came
_____

to me known, and known to me to be the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

Notary Public

---

State of _____
County of _____    ss
On the _____ day of _____    19 _____, before me personally came
_____

to me known, and known to me to be the individual who executed the attached Agreement of Indemnity, and acknowledged that he executed the same.

Notary Public

INDIVIDUAL ACKNOWLEDGMENT

NAS 0128